IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 9, 2011 Session

## IN RE REBEKAH R.W.

**Appeal from the Juvenile Court for Monroe County**
**No. J08-116      J. Reed Dixon, Judge**

_____

**No. E2010-01786-COA-R3-PT-FILED-FEBRUARY 24, 2012**

_____

Perley W. Jr., ("Father") appeals the termination of his rights to his minor daughter, Rebekah R.W. (DOB: Oct. 7, 2005) ("the Child").[1] The petition to terminate was filed by Arlin H. and Emma H. (collectively "the Grandparents"), the Child's maternal grandparents, who were the Child's temporary custodians. At the time of the bench trial, Father was serving an effective 40-year prison sentence pursuant to two convictions for attempted murder and a conviction for attempted aggravated arson. The court terminated Father's rights based upon the ground that Father was incarcerated under a sentence of ten or more years while the Child was under eight years of age, and its finding that termination was in the best interest of the Child. Father appeals the trial court's best interest determination. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Barry K. Maxwell, Madisonville, Tennessee, for the appellant, Perley W., Jr.

Peter Alliman, Madisonville, Tennessee, for the appellee, Arlin H. and Emma H.

_____

[1]The trial court also terminated the rights of the Child's mother, Amy W., on the ground that she willfully abandoned the Child. Mother was served with the termination petition, but did not appear at trial and a default judgment was entered against her. She is not a party to this appeal, and we refer to her only as necessary to present the relevant underlying facts.

John William Cleveland, Sr., Sweetwater, Tennessee, Guardian ad litem.[2]

**OPINION**

I.

Trial was held in May 2010. In addition to Father, who was transported from prison to attend the hearing, the court heard testimony from the Grandparents, a parole officer, and the Grandparents' acquaintances. The Child, by then age four and a half, had lived with the Grandparents since they were awarded temporary custody of her in 2007. Prior to then, the Child first lived with Amy W. ("Mother") for several months and then, after Father obtained legal custody, with him[3] for about a year. In April 2007, the Department of Children's Services ("DCS") obtained custody of the Child after removing her from Father pursuant to a protective custody order. After she was adjudicated dependent and neglected in Father's care, the Child entered foster care. In July 2007, DCS placed the Child in the temporary custody of the Grandparents, with whom she was still living at the time of trial. In March 2008, the Grandparents filed their petition seeking to permanently sever both parents' rights to the Child.

At trial, grandmother testified that she and grandfather had little to no contact with either Father or Mother and had received no support for the Child since she came to live with them. When they picked her up, they immediately took her to the hospital for treatment of a large boil with a staph infection that took over a year to resolve. Grandmother said that initially, the Child was "very frightened [of] men," and "very withdrawn." Grandmother said, however, that by the time of trial, the Child was "wonderful" and physically "very healthy." In addition, the Child had recently completed counseling sessions for her emotional issues; grandmother said she "saw a new child emerging." The Grandparents lived on a farm and the Child enjoyed riding her pony, swimming, and playing with the dog they had bought her. In addition, she had started learning to use a computer. Grandmother noted that the Child had four half-siblings with whom she regularly spent time during their visits to the Grandparents' home and other "play dates." Regarding the Child's parents, grandmother stated that Mother, her daughter, had a drug problem and had been in and out of the Child's life before absenting herself completely. Grandmother said she initially had a "good opinion" of Father, even after he admitted to once assaulting Mother, until after he threatened in a telephone call "to get" grandmother. Grandfather corroborated grandmother's testimony. He added that he would question the ability and desire of someone like Father, with a history of criminal activity, to

---

[2]The Guardian ad litem has adopted the brief of the Grandparents.

[3]Father and Mother were never married to each other.

care for a child. Grandfather believed the Child had been exposed to violence in the past because he had witnessed her waking in the night, "hollering, '[p]lease don't hit me, don't hit me, don't hit me.' "

Long-time friends of the Grandparents characterized them as "the nicest people" whose integrity was "beyond reproach." The friends testified to the effect that the Grandparents and the Child shared a loving relationship and described the Child as "always smiling." The Grandparents stated they intended to file for adoption in the event the termination petition was granted.

The pre-sentence investigation report for Father's most recent convictions revealed an extensive criminal history dating back to 1990. Among his offenses were multiple driving under the influence convictions, various drug-related crimes, burglary, habitual motor vehicle offender, weapons possession, and two counts of aggravated assault.

Father briefly testified that he and the Child shared a "pretty good relationship," and concluded: "I love her. She loves me." Father stated that when he was able, he had cared for the Child and provided her with a suitable home. He enjoyed spending time with the Child and requested that he be permitted to retain his parental rights.

At the conclusion of the trial, the court found that, as to both parents, grounds for termination were established, and that termination is in the best interest of the Child, all by clear and convincing evidence. As to Father, the trial court found one ground for termination – that Father "was convicted in the Criminal Court for Monroe County, Tennessee, on January 25, 2008 of two offenses of attempted first degree murder . . . and sentenced for those convictions to an effective sentence of forty (40) years.[4]" *See* Tenn. Code Ann. § 36-1-113(g)(6) (providing for termination where the "parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered. . . ."). Father timely filed a notice of appeal. He challenges only the court's best interest determination.

II.

Father presents one issue for our review:

---

[4]The record reflects that, in addition, Father was convicted of one count of attempted aggravated arson and sentenced to fifteen years to be served concurrently with the sentences for the attempted murder convictions.

Petitioners failed to meet their burden of proving that it was in the Child's best interest to terminate Father's parental rights.

III.

We employ the following standard of review in cases involving the termination of parental rights:

[T]his Court's duty. . . is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). In weighing the preponderance of the evidence, great weight is accorded to the trial court's determinations of witness credibility, which shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

It is well established that parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).

This Court has observed:

In order to terminate a parent's rights to his or her child, the trial court must make two findings. The court first must find . . . by clear and convincing evidence, that one of the asserted grounds for termination has been established. *See* Tenn. Code Ann. § 36-1-113(c)(1) (Supp. 1998). Once the court has made this finding, the court additionally must find that termination of the parent's rights is in the child's best interests. *See* Tenn. Code Ann. § 36-1-113(c)(2) (Supp. 1998).

***In re C.W.W.***, 37 S.W.3d 467, 475-76, (Tenn. Ct. App. 2000). Both of these elements must be established by clear and convincing evidence. *See* T.C.A. § 36-1-113(c)(1); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, ***State v. Demarr***, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. M.S., filed August 13, 2003), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. ***In re Valentine***, 79 S.W.3d at 546; ***In re S.M.***, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004).

IV.

Father does not challenge the trial court's finding of a ground to terminate his parental rights; nor could he have done so successfully. The judgments of conviction indisputably establish a basis for terminating his rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6). Accordingly, we next consider whether there is clear and convincing evidence to support the trial court's best interest determination. Guided by the relevant statutory factors set forth in Tenn. Code Ann. § 36-1-113(i),[5] we conclude there is.

_____

[5]The factors are as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(continued...)

In a nutshell, Father asserts that it is not in the Child's best interest to terminate "the one parent she had" because it gains her nothing; the Child is already in the Grandparents' custody and Father will be unavailable to her for the foreseeable future.

Regarding the Child's best interest, the trial court stated:

> [T]his is simply saying that this [C]hild, because of the circumstances of both parents and her – where she finds herself is in need of some permanency, some parents that can participate, some parents that can be there, some parents that can take her swimming and horseback riding, and make sure she goes to school and does those things, provides for her in ways that a
> parent and only a parent that's present can do.
>
> And . . . it's for another court to decide whether those parents are [the Grandparents] on their petition for adoption. I certainly find that it is in the best interest of the [C]hild to have a permanency, and . . . that cannot [happen] – unless the [C]hild is made available for adoption, which will happen, . . . as soon as this case becomes final.

In short, nothing in our review of the evidence undermines the court's conclusion that terminating Father's rights is in the Child's best interest. The proof showed that, as a result of his continuing criminal behavior, Father had failed to adjust his circumstances or conduct

---

[5](...continued)

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
>
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
>
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

to enable him to parent the Child.  He is unavailable to support the Child's basic needs or build a meaningful presence in her life.  Moreover, the Child had lived with the Grandparents for some two and a half years by the time of trial and she was, by all accounts, healthy, happy, and well-provided for with them.  It appears that her emotional state has improved with counseling and she is well-adjusted.  Looking at the situation from the Child's perspective, as we must, the evidence preponderates overwhelmingly in favor of the court's finding that she needs and deserves the permanency that the Grandparents intend to provide.

The evidence does not preponderate against the trial court's finding, by clear and convincing evidence, that it is in the Child's best interest to terminate Father's parental rights.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Perley W., Jr. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE